IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALICE WALKER, individually | \| | CIVIL ACTION |
| and as guardian, of | \| | |
| her husband, GERALD H.E. | \| | |
| WALKER, an incompetent person, | \| | |
| | \| | |
| Plaintiff, | \| | |
| | \| | |
| v. | \| | No. 06-366 JJF |
| | \| | |
| CITY OF WILMINGTON; CITY OF | \| | |
| WILMINGTON POLICE DEPARTMENT; | \| | |
| OFFICER SHAWN GORDON, | \| | |
| individually and as agent of | \| | JURY TRIAL DEMANDED |
| the CITY OF WILMINGTON POLICE | \| | |
| DEPARTMENT; OFFICER MICHAEL | \| | |
| BALLARD, individually and as | \| | |
| agent of the CITY OF | \| | |
| WILMINGTON POLICE DEPARTMENT; | \| | |
| OFFICER KAREN BUHRMAN | \| | |
| individually and as agent of | \| | |
| the CITY OF WILMINGTON POLICE | \| | |
| DEPARTMENT, | \| | |
| | \| | |
| Defendants. | \| | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

1.    On June 20, 2006, plaintiff filed an amended complaint alleging claims of

excessive force against officers Shawn Gordon, Michael Ballard and Karen Burhman in violation

of the rights secured to Gerald H.E. Walker by the Fourth and Fourteenth Amendments to the

Constitution of the United States and by 42 U.S.C. § 1983.  Ex. A. (Amended Complaint).

2.     Plaintiff's amended complaint also alleged claims of municipal liability against

the City of Wilmington pursuant to § 1983 commonly know as Monell claims.

3.    An integral part of the Monell claims is that the City of Wilmington and City of

Wilmington Police Department, by and through their authorized agents, servants, and employees,

143909.doc

had in place at the time of the incident the following policies, practices or customs, which were a proximate cause of plaintiffs' injuries:

  f. A failure to discipline their officers with respect to violations of the laws of the State of Delaware, the Constitution of the United States, and their own policies regarding the use of force; and

  g. A failure to adequately investigate citizens' complaints, officer misconduct, and compliance with policy, creating an atmosphere where officers routinely violate policy and violate constitutional rights of the public at large, including plaintiffs. Ex. A.

  4. Sgt. Thomas Kane of the Wilmington Police Department testified that it is the official policy of the Wilmington Police Department that it is the responsibility of an officer's supervisor to produce a written use of force investigation report every time an officer uses force on a citizen or a citizen was injured during the course of an officer's duties as a Wilmington police officer. Ex. B. (Sgt. Thomas Kane's Deposition) at 16.

  5. Sgt. Kane further testified that as a supervisor he has complied with this policy and produced a written use of force investigation report for every allegation of excessive force that was his responsibility to investigate. Ex.B. at 17. Sgt. Kane then testified that it was his responsibility to investigate and produce a report concerning the incident involving Mr. Walker but he is unable to locate the report at the present time. Ex. B. at 17. And, Sgt. Kane testified that on average he has conducted one to three use of force investigations a month since 1999 but has never determined that a Wilmington police officer exerted excessive force on a citizen. Ex. B. at 15 – 17.

  6. In their Motion for a Protective Order, defendants allege "Section 9200(d) does not prohibit disclosure of use of force investigations for the three officers named as defendants in

this lawsuit", but no such reports exist.  OB at 2.  But, this statement is entirely inconsistent with Sgt. Kane's testimony.

7.      Sgt. Kane testified that he has conducted use of force investigations regarding allegations of excessive force against Officer Shawn Gordon and Officer Michael Ballard prior to July 11, 2005.  Ex. B. at 29 – 30.  As such, since defendants have conceded in their motion for a protective order that plaintiff is entitled to any use of force investigation reports concerning the named defendants, it is unclear why defendants have not produced the reports for the use of force investigations concerning officers Gordon and Ballard referenced in Sgt. Kane's deposition, unless the reports simply do not exist as is the case with Sgt. Kane's use of force investigation report concerning this matter.  And if the reports for the use of force investigations prior to July 11, 2005 concerning officers Gordon and Ballard referenced in Sgt. Kane's deposition do not exist, defendants must inform plaintiff of the same through a verified discovery response.

8.      Defendants' reliance on 11 Del. C. § 9200(d)(2) is misplaced because it does not apply to certain categories of the documents plaintiff has requested, and the exception outlined in the statute makes the remaining documents requested by plaintiff discoverable in this matter.

9.      First, 11 Del. C. § 9200(d)(2) does not prohibit the discovery of use of force investigations conducted internally by the Wilmington Police Department prior to the matter being turned over to the Officer of Professional Standards for Internal Affairs.  As Sgt. Kane testified, there is a clear distinction between the investigation report that is required to be produced internally by the officer's immediate supervisor for the Wilmington Police Department and any investigation report or file produced by Internal Affairs.  Ex. B. at 13 – 23.  As such, any use of force investigation report produced internally by a supervising officer for the Wilmington Police Department, prior to the matter being turned over to Internal Affairs, is outside the scope of  11 Del. C. § 9200(d)(2) and is discoverable under Federal Rule of Civil Procedure 26.  As

such, defendants must produce all internal use of force investigation reports produced by a supervising officer for the Wilmington Police Department in the past ten years.

10.    Second, 11 Del. C. § 9200(d)(2) prohibits the disclosure of personnel files or internal affairs investigatory files in cases, "other than those brought by a citizen against a law enforcement officer alleging that the officer breached the officers official duties and that breach resulted in injury or other damage to the citizen." 11 Del. C. § 9200(d)(2). The exception to 11 Del. C. 9200(d)(2) is clearly triggered in this matter where plaintiff is alleging claims against three officers based on the breach of their official duties by exerting excessive force on Mr. Walker that caused Mr. Walker severe personal injuries. Further, Bailey v. City of Wilmington involved a suit by a former police officer against the City for wrongful termination and is thus distinguishable from the instant excessive force action.

11.    Further, there is no language contained in 11 Del. C. § 9200(d)(2) limiting the exception to the named defendants in this action and since the exception is triggered, plaintiff must be entitled to receive copies of all use of force investigation reports conducted by the Wilmington Police Department and the Office for Internal Affairs in the past ten years.

12.    Finally, plaintiff will be severely prejudiced if these reports are not discoverable in this matter. Thus far discovery has revealed that Wilmington police officers are not conducting the required use of force investigations and their accompanying reports creating a custom and atmosphere within the department that officers can exert excessive force on citizens without repercussion. Justice and fairness demands plaintiff be entitled to discovery concerning how often these use of force investigations and reports are done or not done in compliance or contravention of the Wilmington Police Department's own policies and procedures. This is exactly the basis for the exception to 11 Del. C. § 9200(d)(2) that allows for the discovery of these documents in cases such as this.

**Wherefore**, plaintiff respectfully requests the Court deny defendants' motion for a protective order and enter an order compelling defendants to respond to plaintiff's request for production of documents in their entirety, or in the alternative, compelling defendants to provide copies of all use of force investigation reports produced by the City of Wilmington Police Department and the Office of Professional Standards for Internal Affairs with the officers' names redacted from the reports, with the exception of any and all reports regarding the named defendants in this case.

MURPHY & LANDON

*/s/ Philip T. Edwards*
ROGER D. LANDON, No. 2460
PHILIP T. EDWARDS, No. 4393
1011 Centre Road, #210
Wilmington, DE 19805
(302) 472-8112
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALICE WALKER, individually and as guardian, of her husband, GERALD H.E. WALKER, an incompetent person, | \| \| \| \| \| | CIVIL ACTION |
| Plaintiff, | \| \| | |
| v. | \| \| | No. 06-366 JJF |
| CITY OF WILMINGTON; CITY OF WILMINGTON POLICE DEPARTMENT; OFFICER SHAWN GORDON, individually and as agent of the CITY OF WILMINGTON POLICE DEPARTMENT; OFFICER MICHAEL BALLARD, individually and as agent of the CITY OF WILMINGTON POLICE DEPARTMENT; OFFICER KAREN BUHRMAN individually and as agent of the CITY OF WILMINGTON POLICE DEPARTMENT, | \| \| \| \| \| \| \| \| \| \| \| \| | JURY TRIAL DEMANDED |
| Defendants. | \| | |

## CERTIFICATE OF SERVICE

I, Philip T. Edwards, Esq., do hereby certify that on this 26th day of June, 2007 a copy of

the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A**

**PROTECTIVE ORDER** was e-filed and served upon the following individual(s):

Alex J. Mili, Jr., Esq.
City of Wilmington Law Department
City/County Building, 9th Floor
800 North French Street
Wilmington, DE  19801

MURPHY & LANDON

*/s/ Philip T. Edwards*
ROGER D. LANDON, No. 2460
PHILIP T. EDWARDS, No. 4393
1011 Centre Road, #210
Wilmington, DE  19805
(302) 472-8112
Attorneys for Plaintiff

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALICE WALKER, individually         |    CIVIL ACTION
and as guardian, of                |
her husband, GERALD H.E.           |
WALKER, an incompetent person,|
                                   |
        Plaintiff,                 |
                                   |
    v.                             |    No. 06-366 JJF
                                   |
CITY OF WILMINGTON; CITY OF        |
WILMINGTON POLICE DEPARTMENT;      |
OFFICER SHAWN GORDON,              |
individually and as agent of  |    JURY TRIAL DEMANDED
the CITY OF WILMINGTON POLICE  |
DEPARTMENT; OFFICER MICHAEL        |
BALLARD, individually and as       |
agent of the CITY OF               |
WILMINGTON POLICE DEPARTMENT; |
OFFICER KAREN BUHRMAN              |
individually and as agent of  |
the CITY OF WILMINGTON POLICE  |
DEPARTMENT,                        |
                                   |
        Defendants.                |

## AMENDED COMPLAINT

NOW COME the Plaintiffs, Alice Walker, as spouse and

guardian, of her husband Gerald H.E. Walker, an incompetent

person, by her attorneys, Roger D. Landon and Philip T.

Edwards, and complain of the Defendants, CITY OF

WILMINGTON; CITY OF WILMINGTON POLICE DEPARTMENT; OFFICER

SHAWN GORDON, individually and as agent of the CITY

WILMINGTON POLICE DEPARTMENT; OFFICER MICHAEL BALLARD,

individually and as agent of the CITY OF WILMINGTON POLICE

DEPARTMENT; OFFICER KAREN BUHRMAN individually and as agent of the CITY OF WILMINGTON POLICE DEPARTMENT as follows:

1.    The claims set forth herein arise and are instituted pursuant to 42 U.S.C. § 1983 to redress the deprivation by the defendants, acting under color of state law, of rights, privileges and immunities secured to the plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## PARTIES

2.    Plaintiff ALICE WALKER is an adult citizen of the United States of America and a resident of the State of Delaware and is the guardian of the person of Gerald H.E. Walker.

3.    Plaintiff GERALD H.E. WALKER is an adult citizen of the United States of America and resident of the State of Delaware.  Plaintiff GERALD H.E. WALKER is currently subject to an involuntary out-patient commitment order by the State of Delaware and is under the medical care of the Delaware Psychiatric Hospital as an out-patient.

4.    Defendant CITY OF WILMINGTON is, and at all relevant times was, a municipal corporation, organized and existing under the laws of the State of Delaware and is engaged in the operation of a law enforcement agency known as the CITY OF WILMINGTON POLICE DEPARTMENT. Defendant CITY

132505.doc                        2

OF WILMINGTON by and through the CITY OF WILMINGTON POLICE
DEPARTMENT, is under a duty to run its policing activities
in a lawful manner so as to preserve to its citizens the
rights, privileges, and immunities guaranteed and secured
to them by the constitutions and laws of the United States
and the State of Delaware.

5.    OFFICER SHAWN GORDON is a member of the CITY OF
WILMINGTON POLICE DEPARTMENT, and upon information and
belief is an adult citizen of the United States and
resident of the State of Delaware.  At all time relevant,
defendant OFFICER SHAWN GORDON was acting under color of
law and within the scope of his employment as an agent,
servant, and/or employee of the CITY OF WILMINGTON.

6.    OFFICER MICHAEL BALLARD is a member of the CITY
OF WILMINGTON POLICE DEPARTMENT, and upon information and
belief is an adult citizen of the United States and
resident of the State of Delaware.  At all time relevant,
defendant OFFICER MICHAEL BALLARD was acting under color of
law and within the scope of his employment as an agent,
servant, and/or employee of the CITY OF WILMINGTON.

7.    OFFICER KAREN BUHRMAN is a member of the CITY OF
WILMINGTON POLICE DEPARTMENT, and upon information and
belief is an adult citizen of the United States and
resident of the State of Delaware.  At all time relevant,

defendant OFFICER KAREN BUHRMAN was acting under color of law and within the scope of her employment as an agent, servant, and/or employee of the CITY OF WILMINGTON.

### JURISDICTION AND VENUE

8.   This is an action brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 and 28 U.S.C § 1367.

9.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that all Defendants are residents of this district and all acts or omissions which give rise to this cause of action occurred in this District.

### FACTS

10.  Mr. Walker was diagnosed with paranoid schizophrenia in the early 1990's and has received psychiatric treatment related to that diagnosis from Connections located at 500 10th West Street, Wilmington, DE 19802 and the Delaware Psychiatric Hospital located at 1901 North DuPont Highway, New Castle, DE 19720.

11.  Connections is an out-patient mental health facility.

12.  Due to his mental illness, Mr. Walker has experienced paranoid delusions for over twenty years and has required constant mental health treatment. In July 2005

132505.doc                     4

Mr. Walker's mental health deteriorated.  On or about July 11, 2005, Mrs. Walker brought Mr. Walker to Connections for treatment.

13.  The staff at Connections determined that Mr. Walker needed to be transferred to the Delaware Psychiatric Hospital for further in-patient treatment.

14.  In order to transfer Mr. Walker from Connections to the Delaware Psychiatric Hospital, the Connection's staff followed its protocol and contacted the City of Wilmington Police Department to assist in the transfer.

15.  In response to the transfer request from Connections, OFFICER KAREN BUHRMAN of the Wilmington Police Department arrived at Connections to escort Mr. Walker to the Delaware Psychiatric Hospital.

16.  Mr. Walker stated that he did not want to go to the Delaware Psychiatric Hospital and sat down in a chair.

17.  Mr. Walker was not physically threatening nor violent with OFFICER KAREN BUHRMAN and made no verbal threats to OFFICER KAREN BUHRMAN.

18.  OFFICER KAREN BUHRMAN then called for back-up to assist her in the transfer.

19.  Shortly thereafter, OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD arrived at Connections to assist OFFICER KAREN BUHRMAN with the transfer.

20.  OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD requested that Mr. Walker allow himself to be handcuffed and taken to the Delaware Psychiatric Hospital.

21.  Mr. Walker, now standing, once again stated he did not want to be taken to the Delaware Psychiatric Hospital but made no aggressive movements nor verbal threats to the officers.

22.  OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD then, suddenly and without warning, violently threw Mr. Walker to the floor causing Mr. Walker's head to slam into a wall.

23.  After being thrown on the floor by the officers, Mr. Walker laid face down on the floor with his arms underneath his body.  He made no attempt to physically harm the officers nor did he make any verbal threats to do so.

24.  OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD began to repeatedly and violently beat Mr. Walker about the head, neck, arms and back with their fists.

25.  During the beating, OFFICER SHAWN GORDON hit Mr. Walker so hard in his head that the officer thought he broke his hand.  OFFICER SHAWN GORDON then began to use a pair of steel handcuffs, instead of his fist, to continue to violently beat Mr. Walker about the head, neck and back.

26.  As <u>OFFICER SHAWN GORDON</u> continued to strike Mr. Walker about his head, neck and back, <u>OFFICER MICHAEL BALLARD</u> inserted his thumb into a pressure point in Mr. Walker's neck and sprayed mace directly into Mr. Walker's face.

27.  The officers then handcuffed Mr. Walker and removed him from the Connections building.

28.  As <u>OFFICER SHAWN GORDON</u> and <u>OFFICER MICHAEL BALLARD</u> were unjustifiably beating Mr. Walker, <u>OFFICER KAREN BUHRMAN</u> watched the assault and did nothing to protect Mr. Walker from the attack.

29.  At no time prior to, during, or after the police beating of Mr. Walker did Mr. Walker make any aggressive or violent movements toward the police officers.

30.  At no time prior to, during, or after the police beating of Mr. Walker did Mr. Walker make any verbal threats to the police officers.

31.  The only statements made by Mr. Walker before, during, and after the beating were, "Why are you doing this to me?" and "I do not want to go to the hospital."

32.  The City of Wilmington Police Officers named above used grossly excessive and unnecessary force in transferring a fragile mentally ill Gerald Walker from Connections to the Delaware Psychiatric Hospital.

33.  As a result of the willful, wanton and malicious beating at the hands of the City of Wilmington Police Officers, Mr. Walker sustained serious life-threatening physical injury including, but not limited to, a subdural hematoma in his head requiring a craniotomy.

34.  Mr. Walker's beating at the hands of the Wilmington Police Officers also exacerbated his preexisting mental illness.

## COUNT I: 42 U.S.C. § 1983 USE OF EXCESSIVE FORCE (OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD)

35.  Plaintiffs reallege and incorporate paragraphs one through 34 above as though fully set forth herein.

36.  The actions of defendants, OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD, as set forth in Paragraphs 21 through 32 above, amounted to excessive force under the circumstances in violation of the rights secured to plaintiff Gerald Walker by the Fourth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. § 1983.

37.  The actions of defendants OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD deprived Mr. Walker of his right to be secure in his person against unreasonable seizure as guaranteed to Mr. Walker under the Fourth Amendment to the United States Constitution and of the

right not to be deprived of life, liberty, or property without due process of law and to be accorded the equal protection of the laws as guaranteed to Mr. Walker under the Fourteenth Amendment to the United States Constitution.

38.  The conduct of defendants OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD was intentional, wanton, malicious, and oppressive, entitling plaintiffs to punitive damages.

39.  As a direct and proximate result of said conduct of defendants OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD, plaintiff Gerald Walker has been injured and has suffered a loss of personal freedom, physical injury, mental injury, emotional pain and suffering and mental anguish.

40.  As a direct and proximate result of said conduct of defendants OFFICER SHAWN GORDON and OFFICER MICHAEL BALLARD, plaintiff Alice Walker has been injured and has suffered a loss of Gerald Walker's society, companionship and affection.

**COUNT II: 42 U.S.C. 1983 (OFFICER KAREN BUHRMAN)**

41.  Plaintiffs reallege and incorporate paragraphs one through 40 above as though fully set forth herein.

42.  Defendant OFFICER KAREN BUHRMAN's actions, as set forth in paragraphs 21 through 32, in failing to act to

prevent or at least attempt to prevent OFFICER SHAWN GORDON
and OFFICER MICHAEL BALLARD from unjustifiably exerting
excessive force on Mr. Walker and, thereby acquiescing and
ratifying the unconstitutional conduct of OFFICER SHAWN
GORDON and OFFICER MICHAEL BALLARD, deprived Mr. Walker of
his right to be secure in his person against unreasonable
seizure as guaranteed to Mr. Walker under the Fourth
Amendment to the United States Constitution and of the
right not to be deprived of life, liberty, or property
without due process of law and to be accorded the equal
protection of the laws as guaranteed to Mr. Walker under
the Fourteenth Amendment to the United States Constitution.

43.  The conduct of defendant OFFICER KAREN BUHRMAN
was intentional, wanton, malicious, and oppressive,
entitling plaintiffs to punitive damages.

44.  As a direct and proximate result of said conduct
of defendant OFFICER KAREN BUHRMAN, plaintiff Gerald Walker
has been injured and has suffered a loss of personal
freedom, physical injury, mental injury, emotional pain and
suffering and mental anguish.

45.  As a direct and proximate result of said conduct
of defendant OFFICER KAREN BUHRMAN, plaintiff Alice Walker
has been injured and has suffered a loss of Gerald Walker's
society, companionship and affection.

## Count III: 42 U.S.C.1983 (CITY OF WILMINGTON AND CITY OF WILMINGTON POLICE DEPARTMENT)

46.   Plaintiffs reallege the foregoing paragraphs one through 45 as though fully set forth herein.

47.   Defendants City of Wilmington and City of Wilmington Police Department, by and through their authorized agents, servants, and employees, permitted, encouraged, and tolerated an official pattern, practice, or custom of its law enforcement officers violating the federal constitutional rights of the public at large, including plaintiffs.

48.   Defendants City of Wilmington and City of Wilmington Police Department, by and through their authorized agents, servants, and employees, had in place at the time of the incident one or more of the following policies, practices or customs, which was a proximate cause of plaintiffs' injuries:

a.   A failure to adequately train and educate their officers in the proper procedures to employ when interacting with citizens;

b.   A failure to adequately train and educate their officers in the proper procedures to employ when interacting with mentally ill citizens;

132505.doc                              11

c.   A failure to adequately train and educate their officers in the proper use of force to subdue citizens;

d.   A failure to adequately train and educate their officers in the proper use of force to subdue mentally ill citizens;

e.   A failure to adequately train and educate their officers as to how to respond when a fellow officer uses unjustifiable excessive force on a mentally ill citizen;

f.   A failure to discipline their officers with respect to violations of the laws of the State of Delaware, the Constitution of the United States, and their own policies regarding the use of force; and

g.   A failure to adequately investigate citizens' complaints, officer misconduct, and compliance with policy, creating an atmosphere where officers routinely violate policy and violate constitutional rights of the public at large, including plaintiffs.

49.   Defendants City of Wilmington and City of Wilmington Police Department, in engaging in and/or tolerating one or more of the foregoing policies, practices or customs, acted with deliberate indifference to, and in reckless disregard of the welfare and rights of the public at large, including plaintiffs.

50.  The foregoing actions of defendants OFFICER SHAWN GORDON, OFFICER MICHAEL BALLARD and OFFICER KAREN BUHRMAN were directly and proximately caused by the aforementioned policies, practices and customs of the defendants City of Wilmington and City of Wilmington Police Department.

51.  The conduct of defendants City of Wilmington and City of Wilmington Police Department was reckless, willful, wanton, oppressive and grossly negligent entitling plaintiffs to punitive damages.

52.  As a direct and proximate result of said conduct of defendants City of Wilmington and City of Wilmington Police Department, plaintiff Gerald Walker has been injured and has suffered a loss of personal freedom, physical injury, mental injury, emotional pain and suffering and mental anguish.

53.  As a direct and proximate result of said conduct of defendants City of Wilmington and City of Wilmington Police Department, plaintiff Alice Walker had been injured and has suffered a loss of Gerald Walker's society, companionship and affection.

**DAMAGES**

54.  Plaintiffs reallege paragraphs one through 53 as though fully set forth herein.

55. As a direct and proximate result of the aforementioned acts and/or omissions of the defendants, plaintiffs were injured. The damages for which plaintiffs seek compensation from defendants, both jointly and severally, include, but are not limited to, the following:

a.    The physical, mental and emotional pain of Gerald Walker, both past and future;

b.    Medical expenses incurred and to be incurred in the future;

c.    The loss of Gerald Walker's society, companionship and affection suffered by Alice Walker;

d.    Pre- and post judgment interest;

e.    Statutory and discretionary costs;

f.    Punitive Damages

g.    Attorney's fees;

h.    All other relief this Court deems just and proper.

Wherefore, plaintiffs pray for judgment in their favor and against defendants for the relief stated above.

MURPHY SPADARO & LANDON
/s/ Roger D. Landon
Roger D. Landon (ID #: 2460)
Philip T. Edwards (ID #: 4393)
1011 Centre Road, Suite 210
Wilmington, DE 19805
Attorneys for Plaintiffs

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

ALICE WALKER, individually and     )
as guardian, of her husband,        )
GERALD H.E. WALKER, an              )
incompetent person,                 )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )   Civil Action No.
                                    )   06-366 JJF
                                    )
CITY OF WILMINGTON; CITY OF         )
WILMINGTON POLICE DEPARTMENT,       )
OFFICER SHAWN GORDON,               )
individually and as agent of the)
CITY OF WILMINGTON POLICE           )
DEPARTMENT; OFFICER MICHAEL         )
BALLARD, individually and as        )
agent of the CITY OF WILMINGTON     )
POLICE DEPARTMENT; OFFICER KAREN)
BUHRMAN, individually and as        )
agent of the CITY OF WILMINGTON     )
POLICE DEPARTMENT,                  )
                                    )
            Defendants.             )

        Deposition of SERGEANT THOMAS KANE, taken
pursuant to notice at the law offices of MURPHY &
LANDON, 1011 Centre Road, Suite 210, Wilmington,
Delaware, beginning at 2:10 p.m., on Wednesday,
February 7, 2007, before Karen McCloskey,
Professional Reporter and Notary Public.

Sergeant Thomas Kane

1   this person to comply with their wishes.

2         Do you recall ever being part of any

3   training session where some professional or

4   someone was providing guidance to the Wilmington

5   Police Department on how to handle a situation

6   like that?

7       A.    Not specifically for the mentally ill but

8   more for just people in general. Most of the time

9   when we are dealing with them there is a

10  professional there.  Either somebody at the

11  Wilmington Hospital or Christiana or Connections.

12  Or at the home usually there is paramedics

13  standing by just in case to help.  Sometimes they

14  get called first so they would be there.  A lot of

15  the times when we're dealing with the mentally ill

16  we're not there by ourselves.  We are there with a

17  medical professional.

18      Q.    Let's say we've got that hypothetical

19  situation and there is some hospital or medical

20  person there, are you aware of the Wilmington

21  Police Department providing any training to its

22  officers in the last 25 years that you have been

23  there as to how they are supposed to utilize that

24  medical person or that professional health care

1   person in a situation where they are trying to get

2   a mentally ill person to comply with their wishes?

3        A.   Again, not specifically for the mentally

4   ill.  No.

5        Q.   In July of '05 was there some sort of

6   policy in the Wilmington Police Department about

7   investigating use of force incidents among the

8   Wilmington police officers?

9        A.   Yes.

10       Q.   Tell me what that policy was in July of

11  '05?  Before you tell me that, is that policy any

12  different today than it was in July of '05 to your

13  knowledge?

14       A.   No.

15       Q.   Tell me what that policy was and is?

16       A.   Whenever an officer has to use force or

17  anybody is injured, they are responsible for

18  notifying the supervisor right away.  The

19  supervisor is responsible for responding out as

20  quickly as possible.  Interviewing the officers

21  involved.  The defendant will speak to us and

22  trying to locate any witnesses that might have

23  witnessed the incident.

24              After that is all done the

1    supervisor, usually a sergeant or lieutenant, is

2    responsible for typing up the use of force

3    report.   Reviewing what happened with the

4    incident.

5        Q.   Is that policy that you have just

6    described for me, has that been reduced to a

7    written form as well?

8        A.   Yes.

9        Q.   Is that in the white book also?

10       A.   Yes.

11       Q.   Is there more to it than what you have

12   described --

13       A.   As far as the supervisor's role?

14       Q.   Right.  You said the officer is supposed

15   to report it to the supervisor and the supervisor

16   is supposed to respond as quickly as possible. And

17   is supposed to speak to the officer or officers,

18   speak to the defendant and speak to any witnesses

19   and then type up a use of force report.   Am I

20   right so far?

21       A.   Yes.

22       Q.   Is there anything else to the use of

23   force investigation policy?

24       A.   No.

1    Q.    What happens if the supervisor determines

2  that there has been excessive use of force?

3    A.    There would be what we call a trial board

4  where the officer would be notified. It's a

5  notification of complaint that there are

6  allegations being made against an officer.  And

7  the Office of Professional Standards for Internal

8  Affairs would assign an investigator from internal

9  affairs to investigate anything further.

10           The first line supervisor did it and

11  then the complaint hearing board would be

12  convened.  And that would comprise of three

13  captains from the Wilmington Police Department.

14    Q.    How long have you been in a position

15  where you would be actually responsible to conduct

16  use of force investigations for officers under

17  your supervision?

18    A.    When I was promoted to sergeant.

19    Q.    Would that be 1999?

20    A.    Yes.

21    Q.    Have you continuously over that period of

22  time from 1999 to present been responsible for

23  conducting use of force investigations?

24    A.    Yes.

1    Q.    Do you have any idea how frequently you

2    have had to do that or how many in those seven or

3    eight years, just roughly?

4    A.    It's hard because you might go a month or

5    two where you don't have any and you might go a

6    month where you have three or four.  It would be

7    difficult for me to give you an approximate

8    number.  Things happen and they kind of come in

9    cycles where you don't have any for a while and

10   then you have maybe two or three.

11   Q.    If you could narrow it for me at all, I

12   mean, are we talking a hundred or more a year, a

13   lot less than that, a lot more than that?

14   A.    The best I could say probably like one to

15   three a month on average.

16   Q.    Some months might be zero and some months

17   might be more than three?

18   A.    Yes.

19   Q.    Does the written use of force

20   investigation policy require the supervisor to

21   type up a use of force report in every instance?

22   A.    Every instance where an officer either

23   used force or the defendant was injured.

24   Q.    Do you typically try to comply with that

1    policy?

2        A.    Yes.

3        Q.    Have you complied with that policy in

4    every use of force investigation that you have

5    done since 1999?

6        A.    Yes.

7        Q.    Including the Walker case?

8        A.    Yes.

9        Q.    You typed up a report?

10       A.    Yes, sir.

11       Q.    You can't find it?

12       A.    No.

13       Q.    When you type up a report is that typed

14   on a computer?

15       A.    Yes.

16       Q.    How many times since 1999 when you have

17   conducted a use of force investigation have you

18   made a determination that there was reason to

19   believe that there was excessive force used?

20       A.    I have never had any.

21       Q.    So then I take it by that answer there

22   has never been a use of force investigation that

23   you have conducted where the Office of

24   Professional Standards has had to get involved by

1  assigning an investigator or doing anything at

2  all?

3      A.    That's correct.

4      Q.    Have you ever worked in the Office of

5  Professional Standards or what used to be called

6  Internal Affairs Group?

7      A.    No.

8      Q.    Are you personally aware of any instances

9  since you have been employed by the Wilmington

10 Police Department where the Office of Professional

11 Standards or whatever its predecessor is called,

12 actually did an investigation into a situation

13 where a supervisor thought there was potentially

14 excessive use of force?

15     A.    Yes.

16     Q.    How many such investigations of that

17 nature are you aware of?

18     A.    I mean, they could have occurred and I

19 didn't know about them because it wasn't on my

20 shift.  We are a fairly small department.  I

21 wouldn't know about any other platoons or anything

22 like that.

23     Q.    I understand your answer and I appreciate

24 it.  You wouldn't necessarily know whether such

Sergeant Thomas Kane                    19

1    investigations were going on. My questions is are

2    you aware of any?

3        A.    Yes, there has been some.

4        Q.    Do you have any idea how many you are

5    aware of?

6        A.    For the last 25 years?

7        Q.    Yeah.

8        A.    Again, I just don't feel I could answer

9    it giving a number with all the years.  I only

10   work certain hours on certain days and it could

11   have been other divisions. I really couldn't

12   answer accurately.

13       Q.    Do you know who currently in the

14   Wilmington Police Department would probably be in

15   the best position to know how many such

16   investigations have been conducted let's say in

17   the last ten years by the Office of Professional

18   Standards for excessive use of force?

19       A.    I would assume it's Captain Jerry Custis

20   who is in charge of the Office of Professional

21   Standards right now.  There has been several other

22   captains over the years.  I would assume that they

23   do a report every month of every year where it is

24   tallied up.

Sergeant Thomas Kane

1    Q.    His name is Jerry Custis?

2    A.    C-U-S-T-I-S.

3    Q.    He's in charge of the Office of

4    Professional Standards?

5    A.    Yes.

6    Q.    Do you know how long he has been in that

7    position?

8    A.    I would say about a year.  He was just

9    promoted.

10   Q.    Do you know what his job was before the

11   promotion?

12   A.    He was a lieutenant in the Special

13   Operations Division.

14   Q.    What happens in a situation where the

15   Office of Professional Standards assigns an

16   investigator, what's the next step?  Does that

17   investigator make a determination on his or her

18   own about whether or not there was excessive force

19   or does it have to go the complaint hearing board?

20   A.    I have never been assigned to internal

21   affairs.  To my knowledge the sergeant would

22   probably discuss with the captain and maybe one or

23   two of the other sergeants in the office trying to

24   cover all the basis.  I guess it would be the

Sergeant Thomas Kane

```
 1   captain of the Office of Professional Standards to

 2   make the determination on whether to take it to

 3   the complaint hearing board or not.

 4        Q.   Do you know what the potential sanctions

 5   or actions taken by the complaint hearing board

 6   are after a hearing on excessive use of force

 7   charge; what they can do about it?

 8        A.   It would depend on -- each violation of

 9   our policy has a different level. If it is

10   something minor your might just get a written

11   reprimand in the file.  You could get suspended

12   for so many days.  There is a range of two days to

13   five days if you do something.  As far as

14   excessive use of force I don't know what kind of

15   charge they put on that.

16        Q.   Let's say hypothetically there is a

17   situation where a supervisor after receiving a

18   report from one of his officers under his

19   supervision that there has been use of force, the

20   supervisor goes out and does his investigation and

21   determines that use of force was appropriate.  The

22   matter is essentially put to rest internally with

23   the police department.

24              And then subsequently a claim is
```

Sergeant Thomas Kane

22

1  made by somebody that there was excessive use of

2  force. Does that reopen the investigation

3  internally?

4      A.    Yes.

5      Q.    Is there a separate written policy that

6  deals with that sort of situation?

7      A.    I believe there is one in our white

8  book.  I don't know if there is something separate

9  in the procedures for the Office of Professional

10 Standards or not.

11     Q.    What happens in that situation?  What

12 internally happens in terms of reopening the

13 investigation?

14     A.    Again, it would be assigned to one of the

15 sergeants assigned to the Office of Professional

16 Standards.  Exactly what they would do, again, I

17 have never been assigned there.  I would assume

18 they would review it and re-interview some of the

19 witnesses.

20          MR. MILI:  When you say claim could

21 you specify what you mean by claim in terms of

22 someone filing a complaint with the Internal

23 Affairs Office versus filing a lawsuit against the

24 City.  Just to make the record more clear.

1    BY MR. LANDON:

2        Q.    I'll try to do that.  Do you understand

3    what the City lawyer just said?

4        A.    Yes.

5        Q.    Were you answering as to what would

6    happen if a claim was made with the Office of

7    Professional Standards, or was your answer what

8    would happen if a lawsuit was filed or would your

9    answer be the same regardless of either of those

10   two options?

11       A.    From my perspective it would be the

12   same.  I haven't been assigned to internal affairs

13   and I can't be specific on how they determine

14   whether to reopen a case or not.

15       Q.    Do you know whether there has been any

16   reopening of any internal investigation into

17   whether or not Officers Gordon, Ballard or Buhrman

18   used excessive force in dealing with Gerald Walker

19   on 7-11-05?

20       A.    I'm not aware of anything.  No.

21       Q.    What if anything did you do to prepare

22   for your deposition here today?

23       A.    Last Friday I had a meeting with the City

24   attorney.

Sergeant Thomas Kane

29

1        A.    I would say approximately two years.

2   Possibly a year to two years.

3        Q.    During the time that Officer Gordon was

4   under your supervision prior to July 11, 2005, had

5   you ever had to conduct a use of force

6   investigation relating to any incidents that he

7   may have been involved in?

8        A.    Yes.

9        Q.    How many times?

10       A.    It's hard to give a number.  I probably

11  couldn't give you a certain number.

12       Q.    Are those use of force investigation

13  reports saved for some length of time?

14       A.    I know they are filed in the Office of

15  Professional Standards.  I don't know how long

16  they keep them.

17       Q.    Are they filed by -- how are they filed

18  by name or by year?

19       A.    Again, I haven't been assigned there so I

20  don't know their filing system.

21       Q.    Can you give me any general sense of the

22  number of use of force investigations you had to

23  do regarding Officer Gordon in that one to two

24  year time period before July 11, 2005?

1      A.    I'm sorry, I couldn't give you a number.

2      Q.    Same question with regard to Officer

3  Ballard, did you have to do any use of force

4  investigations involving Michael Ballard in that

5  time frame?

6      A.    There wouldn't have been too many.  He

7  was a fairly new officer and I don't remember what

8  year he graduated.  He was a fairly new officer,

9  maybe a year or two on at the most. Again, I

10  couldn't give you a number.

11      Q.    What do you remember about how you first

12  came to know that there was an incident involving

13  particular officers that are defendants in this

14  lawsuits in regard to Gerald Walker?

15      A.    Possibly would have been over the radio

16  or maybe cell phone from either Gordon or Buhrman.

17  They would have called me on their cell phone or

18  by radio letting me know they had to struggle with

19  an individual.

20      Q.    Do you actually remember how you got the

21  notification?

22      A.    My best recollection would be either

23  radio, police radio, or my cell phone.

24      Q.    Do you remember which one called you or